Good morning. May it please the Court, I am Tom Lenhart, Assistant Attorney General and Counsel for the State of Alaska. I realize that you're well briefed in this case, and therefore I will focus my remarks on only two issues this morning, the first being the importance of the Congressional direction provided in ANILCA and TTRA and the USDA implementation of that Congressional direction, and the second issue will be the intended duration of the exemption and the error below in substituting judgment on that issue. With regards to Congressional direction, the record of decision in this rulemaking was 11 pages, and on six of those pages, or at least parts of six pages, you will find discussion of the settlement with the State of Alaska and the importance of ANILCA and TTRA. On page 81 of the excerpt of record, you'll find the most extensive discussion of the significance of Congressional direction. There, there's a full discussion of the provisions of ANILCA as they relate to the Congressional finding that Congress had already found the proper balance between protection and development of federal lands. USDA then went on to discuss the provisions of the Tongass Timber Reform Act, TTRA, and the directive to USDA to seek to meet timber demand on the Tongass. Concluding this section in which only these statutes were discussed and no other statutes, USDA stated, these statutes provide important Congressional determinations, findings, and information relating to management on the Tongass. They went on to say they carefully considered these directives and that the final rule reflects how to best implement the letter and spirit of Congressional direction. Under Chevron, the NRDC, the U.S. Supreme Court has said when Congress speaks and the agency implements, that is essentially the end of judicial review. However, in this case, the lower court determined that ANILCA and TTRA were not even proffered as a rationale for this rulemaking. Apelli has argued in their brief that the section I'm referring to, even though no other statutes are mentioned, argues that the Congressional direction referred to by USDA is that of seven other statutes, none of which have specific guidance on the Tongass, such as ANILCA and TTRA. If there is any doubt remaining as to the intent of USDA, one can also turn to the publication of the draft rule in the Federal Register. This is found in the record in Document 42-25. On pages 4 and 5 of the draft rule, there's actually a section with a heading that says, Congress has given specific direction to protect national interests on Alaska public lands. This section then goes on to fully discuss ANILCA and TTRA and no other statutes. At the conclusion of that section, USDA states that they will consider whether the proposed rule better implements the direction from Congress for the Tongass. So in this case, USDA said it was going to consider the intent of ANILCA and TTRA. They took public comment on it. And after considering that direction, they stated the best way to implement the letter and spirit of the law is to exempt the Tongass. The state submits that as a very, very clear statement of the primary rationale for this rule. And it's difficult to read the documents in any other way. The state also submits that under the Chevron decision, that this rationale alone is sufficient to affirm the agency's rulemaking. The second point I have today regards the intended duration of the rule. The district court concluded that this was a short-term rule only and then proceeded to essentially do its own analysis of the impact of the rule on socioeconomic factors, on legal uncertainty, et cetera. However, it was never intended as a short-term rule. It was intended as an indefinite rule to be in place until such time as there was a final rulemaking. What's the source of the general roadless rule? What does that emanate from? I know we're here talking about the exception for the Tongass. Right. But what's the origin of the roadless rule itself? I'm not sure of your question. It was a 2000... I'm looking for information. It was a 2000 rulemaking that was just an absolutely massive undertaking. It was conducted in a very short timeframe of about 13 months. And it affected 58 million acres, I believe. But with appropriate notice and comment, correct? That was an issue in the appeals. There were many requests for extensions of the comment period. There were many requests for cooperating agency status. And virtually all of those were denied because of the tight timeframe of that rulemaking. Are ANILCA and TTLA before or after the adoption of the roadless rule? Well before. I don't recall the promulgation, or not the promulgation, the passage of ANILCA. The Tongass Timber Reform Act. ANILCA is 1981. 1981 sounds correct. And the Tongass Timber Reform Act was a 1990 amendment to ANILCA. So they've been in place for quite some time at this point. Returning to the issue of the intended duration of the rule, going to page 77 of the excerpt of record in the rod, in the section on changes between draft rule and final rule, only one change is discussed. And that is the fact that in that interim, the roadless rule had been invalidated by the district court in Wyoming. USD wrote to clarify the intended duration of the rule. The lower court focused on language in the settlement agreement with the state that said that USDA would proceed timely with the final rulemaking that would replace the temporary exemption. However, with the roadless rule now invalidated, in that section on the rod, USDA explained that they were going to proceed with the rulemaking but only within consideration of various other factors, including litigation such as the invalidation of the rule that they were exempting. And they went on to say that to clarify that the exemption would remain in place until such time as there was another rulemaking. In effect, that's really not much different than any other rule that's passed as a permanent rule. You pass a rule, it's going to be in effect until it's changed. They clearly anticipated that it might be in effect for a considerable period since there was no current need to do a permanent rule. Several years later, this was actually affirmed in this district. In 2006, in the Northern District of California, in the Lockyer case, the court invalidated the state petitions rule, which had replaced the roadless rule. The court reimposed nationwide the roadless rule. They also reimposed... And by that time, the Wyoming case had gone to the Tenth Circuit, correct? The Wyoming case was at the Tenth Circuit, and with the passage of the state petitions rule in 2005, which effectively repealed the roadless rule, the Tenth Circuit vacated the judgment as moved. So out went... Out went the district court case. So at this point, we have the state petitions rule replacing it. So the roadless rule is still gone, but the Northern District invalidated the state petitions rule, reinstated the roadless rule, and now the question was, what do we do with the Tongass? Plaintiffs in that case argued, you have to reinstate the roadless rule without the exemption because the Tongass exemption was a temporary rule only, and they never did the rulemaking. The court said no. The Tongass exemption was to be in place until there's a final rulemaking. It has never expired. It is a valid rule. That was in 2006. The Ninth Circuit affirmed that case. So effectively, this court has already looked at whether or not this is a short-term rule and said no. Effectively, it's an indefinite rule until there's a final rulemaking, and that's never occurred. Again, the importance of this is that the lower court essentially reanalyzed USDA's analysis of the effect of exempting the Tongass on jobs, on legal certainty, and basically in each case they said it's implausible that we'll have this effect because it's only a short-term rule and you're talking about long-term effects. However, given the fact that USDA didn't intend it to be short-term but fully intended it to be an indefinite rule and fully realized it was likely to be in effect for some time, it was completely appropriate to analyze the effects on a longer-term basis. May I ask you a question, Mr. Lenhart? Yes, Your Honor. Sort of a basic question. Do we review the district court's order under an abuse of discretion standard or under a de novo standard? Your Honor, I believe you're reviewing this case under a de novo standard. Because of those legal questions? Yes. I mean, there's a certain, I suppose, linguistic gymnastics going on here where, well, we have a temporary rule, but now you're saying, well, it's not really temporary, it's like a final rule unless something else happens. So I'm having a little bit of a collision here in terms of the principles because it's like you want to get the advantages of one but call it something else. So I think that it's described here repeatedly as a temporary rule. So would you address that point? Well, Your Honor, it was temporary in the sense that it was to be in place until they completed a final rulemaking on the status of the two National Forests in Alaska. So you have to treat it as temporary. It's temporary in that sense. The point I was making earlier. I guess the problem I'm having is that you want to now cast it as if, well, in effect like a final rule because it might take a long time, and therefore it's not temporary. But it's continuously characterized as temporary within the record of the decision. Well, I think the important fact here is that USDA, in that section on changes between rules, it's very clear from their discussion there that they realized that even though it is indefinite or temporary or whatever word we want to apply, they realized it may be in effect for quite some time. Could you explain something else that I had a question about, and that is you didn't have a new vice explaining this sort of change circumstances. So you have one position here, you, but I mean actually USDA, has one position here, and then we have no new or significant information, and we have a flip in the policy. So why is that? Well, Your Honor, I think the change in the policy is actually very well explained in that they, the lawsuit with the State of Alaska alleging violations of ANILAC and TTRA caused them, as they publicly noticed, to go back and take a very hard look at what Congress had to say regarding management of the Tongass and further protection of lands. And having done that, they simply reweighed the factors they had considered previously. They looked at the same four alternatives they looked at in 2001. You're saying it's the settlement is the change? Well, the settlement is not the change. The settlement prompted them to look hard at ANILCA and TTRA. But it just seems odd to me that if you have a reasoned decision two years before and there's no change in circumstances, ANILCA didn't change, TTRA didn't change, all of that was the same before, and then you just flip the policy. So without some explanation, that's what seems irrational. Well, it was, in the original rulemaking, of course, it was a very close decision in the sense that the draft environmental impact statement exempted the Tongass. But the final... And much of the rationale was the need to seek timber demand. So we start with the fact that it was a very close initial decision. I'm not sure you start with that fact, because don't you start with the fact where you ended up on the first rulemaking? I mean, you don't sweep in all the comments and everything. At that point, you have a final rule. So maybe you're right. Is there an administrative law case that would support... I don't have support for that, Your Honor. Yes, obviously you're correct that the final rule is the final rule. So one other question. The entity who normally would be here along with you is not here. There's kind of the empty seat of the Forest Service, the USDA, who has basically let the district court decision stand. What, if anything, do we make of that? Your Honor, I don't think it's appropriate to draw any inferences from silence in this case. It's not unusual for the federal government not to appeal. In fact, when the district court in Wyoming, the first time, invalidated the roadless rule. The federal government did not appeal. The environmental groups went alone. I can't speak for what their litigation strategies are. I don't know why they're not here. Fair enough. But I don't think you can draw an inference from them not being here. Did you want to save time for rebuttal? Yes, I was just going to ask to reserve the remaining time for rebuttal. Thank you. Thank you. Thank you. Good morning. May it please the court. My name is Tom Waldo. I'm the attorney for Organized Village of Cake and the other plaintiffs in this case. Judge Sedgwick in the district court carefully reviewed the administrative record and correctly held that each of the principal rationales advanced by USDA in support of the Tongass exemption was arbitrary. What I'd like to do today is I'd like to address each of those three rationales, which were road and utility connections, jobs, and uncertainty. But I'd like to start by responding to the two points that Mr. Lenhart emphasized. First, about the ANILTA and TTRA argument. This argument is really a red herring that doesn't change the outcome of this case. The record of decision never directly states that the Tongass exemption was based on ANILTA or the TTRA, and USDA did not argue it that way in the court below. Pardon me, Mr. Waldo. On page ER75, the statement is made that ANILTA was passed, quote, with the understanding that sufficient protection and balance would be ensured between protected areas established by the Act and multiple use-managed areas. And I take it that's part of the preamble. And then later, at page ER83, where the record of decision summary is stated, the ROD says, for the reasons identified in this preamble, the Department has decided to select a Tongass-exempt alternative described in the RODLESS rule. So they mention it at the beginning and at the end. You're saying they didn't mention it sufficiently. Well, they mentioned it. They mentioned it quite a bit. What I'm saying is they never state the reason that we are adopting this rule is because of the RODLESS rule. But it does not say this is the reason why we are making this decision. The decision of the agency is not sufficient for the APA. I cannot cite a case like that, Your Honor. But I can say that the agency stated much more directly throughout this record of decision that it was basing its decision on socioeconomic costs, which were roads, utilities, and jobs, and on uncertainty. And particularly, let me point to that. Just before you get to that, there was one other point between the two parts that Judge Beyer read on page 81 of the excerpt of record. The ROD says, this final rule reflects the Department's assessment of how best to implement the letter and spirit of congressional action, and then as set out in TTRA and ANILCA. Yes. So that I understand your argument. So they say that the rule reflects the assessment of implementing these statutes, but you're saying that they don't say how? Well, what I'm saying is that, first, that's an ambiguous sentence. It's letter and spirit of congressional direction, and that's a pretty broad statement. It does not in and of itself constitute a reasoned explanation for a complete reversal of policy from two years ago. So, I mean, that's what you're saying is that there's not a reasoned explanation of why there was the flip. Yes, I am saying that. And I want to say one other thing about that sentence because I think it's extremely important. That ambiguous sentence is the primary sentence that the state relies on to make that link, that USDA was actually basing its decision on ANILCA and TTRA. But if you read that sentence all the way to the end, what it says is, the Department is acting in light of roadless values on the Tongass, the protection of roadless areas already included in the Tongass Plan, and the socioeconomic costs to local communities of applying the roadless rules prohibitions. So, even if the state is right, even if somehow the spirit of ANILCA or the spirit of TTRA moved USDA to adopt this rulemaking, it remains the case that USDA was clearly and explicitly engaging in a balancing between roadless values on the one hand and social and economic costs on the other. Would they just follow what Congress said, saying, you can't add any more protection to the Tongass than in that 5,000 acre area? Oh, no, Your Honor. They definitely did not say that. Isn't that what it says, with the understanding that sufficient protection and balance would be ensured between the protected areas established by the Act and the multiple use managed areas? No. The state concedes, and we agree, that USDA never reversed its position that the roadless rule complied with ANILCA and the TTRA. Supplemental excerpts of Record 4, the agency stated its position in adopting the rule that it complied with ANILCA. Supplemental excerpts of Record 5 to 6 complied with TTRA. Supplemental excerpts of Record and regular excerpts of Record 98, Column 1, they complied with TTRA. The state of Alaska concedes in its brief at page 16 that USDA never reversed its positions about what ANILCA and TTRA required. Just going back to that, then, you know, there's a certain aspect of this case that looks like we're trying to relitigate what ANILCA and the TTRA said and how they affect the roadless rule, but you're saying that on that point, the government never changed its original position. There's no statement that says roadless cannot comply, or is that in collision with ANILCA? The agency never reversed its position on that point. That's correct, and the state concedes that in its brief. So the state's argument is one that's based on the spirit of the law rather than the letter of the law, and that's why they emphasize that sentence so much in their briefing. And I want to return to that point, that even in that sentence, the agency was engaging in a balancing. It was weighing social and economic costs. Mr. Waldo, the black letter, what I'm reading, is not that the department is trying to implement the spirit of congressional direction only. How best to implement the letter and spirit? So how do you get around that language? They were implementing the letter of ANILCA and TTRA and the spirit. Well, ANILCA and TTRA give the agency discretion, so it would be possible under ANILCA or TTRA for the agency to apply the roadless rule to the Tongass or not to apply it to the Tongass, and they could be complying with the letter of the law either way. Let's maybe see if we're on the same page as some terms. The roadless rule grants protection from development to forest land, true? True. All right. ANILCA says that no more protection shall be granted to the Tongass other than for the 5,000-acre area, true? No. It says no withdrawals of 5,000 acres, and the roadless rule is not a withdrawal. That's an issue in another case, incidentally, and the state in their reply brief disowned the argument that they were actually arguing that there was a violation of ANILCA here. All right. And so in other words, this is where I was maybe trying to go with my question. It seems to me it's not at odds with ANILCA, but that we're not in a position where we have to make that legal decision, correct? That's correct. The state has been explicit that they are not asking you to make that decision. They've raised those issues in another case currently pending in Washington, D.C. What's the status of that case? Motion to dismiss is pending, briefed, and waiting for a decision. It has not yet been argued yet. So if I may return to my point, there was very explicitly a balancing of social and economic costs versus roadless values that took place here. That's reflected in that very sentence about the letter and spirit of congressional direction. The agency had discretion under ANILCA and TTRA and other statutes about what to do. It engaged in a balancing as part of that discretion, and that balancing is what we are arguing was arbitrary and what the district court held was arbitrary. So that's arbitrary. Judge Sedgwick's decision should be affirmed, and the rule is arbitrary even if the letter and spirit of ANILCA and TTRA were part of what drove the agency's decision. Let me point to a couple of other places where... How can it be arbitrary for an agency to follow the letter and spirit of the law? What I'm saying is, as I said, the letter of the law allows an outcome either way. They have discretion, and there's nothing in here that says contrary to that. So they misinterpreted the letter and spirit of the law. I'm sorry? They misinterpreted the letter and spirit of the law, finding that the roadless rule was not discretionary, could not be adopted by USDA, and had to be rejected as the Tongass. Is that your point? They never said that. They never said that it had to be rejected. It's clear that they were exercising discretion about how to balance these various considerations. If they were exercising discretion, how were they arbitrary and capricious in following the letter and spirit of the law as they saw it? Were they wrong as to the letter and spirit of the law? The letter and spirit of the law allows them discretion which involved weighing different factors, and it's that weighing of the different factors that they did in this record of decision that was arbitrary. Well, just to be clear, we don't have a situation here where they interpreted ANILCA and as an agency, I guess actually Department of Interior and Forest have different aspects of it, but as an agency that implements it, we would be deferring to their interpretation of the statute because they never told us what their interpretation was, correct? No, they have said their interpretation is … Their prior interpretation was that it's legal to have a roadless rule. Yes, that's correct, which they never reversed. But in this record of decision, all they say is basically letter and spirit, and they don't tell us any specifics that are at odds. We don't have anything to look to, in other words. That's correct. The specifics were that they had discretion. They could balance. They could consider roadless values and balance them against social and economic costs, and that's what they were doing throughout this record of decision. Well, we've made you in getting to your other points, but we're trying to understand the context of this. Yes, I hope I've clarified my position on that. I'm certainly not trying to cut you off. If I've not fully answered your question, please let me know. But let me point to a couple of places in the record of decision that make clear that they're doing this. In the record of decision summary that Judge Bea identified on ER 83, it says the reasons in this preamble, but it goes on to be much more specific. It says, The department now believes that considered together, the abundance of roadless values on the Tongass, the protection of roadless area values included in the plan, and the socioeconomic costs and hardships to local communities of applying the roadless rules provisions to the Tongass outweigh any additional potential long-term ecological benefits. That's a weighing. That's a weighing of costs versus benefits. And it doesn't mention ANILCA or TTRA. This summary identifies the balancing that they were taking place under their multiple-use balancing authority without mentioning ANILCA or TTRA. Where are you reading in ER 83? The center column, second paragraph. The one that begins, the Tongass not exempt? Yep. Let me point to another place. This is SER 83, right? No, ER 83. ER 83, okay. Which? That was it? Have you found the place? Yes. Okay. Let me point to one other place that's something similar on ER. Your point is there's no mention of ANILCA nor TTRA in the paragraph you read. In the entire record of decision summary, there is no mention of ANILCA or TTRA. Well, because for the reason identified in this preamble, you agree that the preamble does mention it. It certainly does, yes. But what I'm trying to talk about is look at what they're talking about. Here's where the agency is succinctly stating, here's why we made our decision. And they managed to say that without mentioning ANILCA or TTRA but by emphasizing a weighing of social and economic costs against ecological benefits and other factors. Would your position be different if they had said, and furthermore, we are considering the policy provisions of ANILCA and TTRA? Well, if they had stated some, that that policy was the reason that they were For instance, if they stated there was sufficient protection and balance already in ANILCA? If that was what they stated for their decision, I mean, remember what That's what they stated in their decision in the record of decision summary by referring back to the preamble. And let me go back. So the preamble discussion of ANILCA and TTRA, it's talking about congressional protection. So what that provision that you're talking about of ANILCA, it talks about what areas that Congress has protected. There's a reason that Congress had designated enough wilderness and enough multiple use lands. And that was the right balance. But it didn't change the agency's authority about how to manage the multiple use lands. The multiple use lands still had lots of discretion available. So the agency wasn't finding that it had violated ANILCA. It was simply stating what ANILCA requires. And when the agency explained why it was making this decision, it didn't say in its most direct and clear summary. It didn't say ANILCA and TTRA required us to do this. It said we balanced these factors. And let me point to one other place. Under the heading, excerpts of record 76, in the third column at the bottom, there's a heading that says why is USDA going forward with this rulemaking. It lists three things. Number one is, quote, one, serious concerns about the previously disclosed economic and social hardships that application of the rules prohibition would cause in communities throughout Southeast Alaska. Again, social and economic harms. And they've made clear earlier on that page in the first column, under the column about Southeast Alaska communities, that the social and economic harms they're talking about are roads, utilities, and jobs. That's what's being emphasized here. It's the social and economic harms is what's driving this decision. And there are two other reasons given. Yep. Comments and uncertainty. And the condition over the last two years, including the Wyoming case. And that refers to the uncertainty issue. Yes, exactly. And we've addressed each of those issues in our brief. So let me ask, you keep kind of incorporating the preamble by reference, although they don't really tell us in the preamble what it is that changes their mind about ANILCA. But let's just say we can divine that. If the other reasons they list are deficient, then where does that leave you administratively? Harmless error analysis. If there's a rationale that's given in here that you find to be arbitrary, and I submit there are on jobs, roads, and utilities, and uncertainty, then the decision should be struck down, unless you find harmless error. So to uphold the agency action under Ninth Circuit precedent requires the court to determine that the error clearly had no bearing on the agency's decision. I can provide a citation for that, if it would be helpful. But in this case, you cannot say that any of these rationales clearly had no bearing on the decision. In fact, they clearly did have a bearing on the decision. They emphasized them over and over. They talked about them, the roads and utilities, the jobs, the uncertainty. These were factors they mentioned repeatedly, and it would not be possible to hold that that had no bearing on the agency's decision. Finally, I'd like to quickly address the argument about the intended duration of the rule. It's true that the rule has no definite end point, but it has a definite ending event. The definite ending event was the adoption of a permanent rule. At the time they initiated the temporary Tongass exemption, they also initiated a permanent rule. There were two rulemakings going ahead on parallel tracks, and it was clear that they intended the temporary exemption to be short-term. I refer you to excerpts of record, page 77, in the first column. It states it describes the rule as being a short-term rule three times in one paragraph. It was abundantly clear from the context that that rule was only going to last for, that the intention was that the rule would last for a short time. Now, because the permanent rule, which was the state petition's rule, eventually got thrown out, the old rule got reinstated. The rule as it preexisted under Paulson included the temporary Tongass exemption, so the temporary exemption became a de facto permanent rule. But it never was intended that way. The record of decision repeatedly emphasizes the short-term and temporary nature of the rule. Since that was the purpose of it, the reasons have to be justified in light of that purpose in order for it to not be arbitrary. As we've argued, the jobs and the roads and utilities and the uncertainty rationales were all severely undercut by the fact that this was only a short-term rule. Mr. Linehan took the position that since through the backdoor the temporary rule or the exemption became part of the final rule, in effect, under the Ninth Circuit precedent, that that's fixed in a way and maybe cooks your goose. What's your response to that? Well, the reason that it sprang back into being did not reflect any holding by the court that it was appropriate that the Tongass exemption should be a permanent rule. Rather, it was just an application of the Ninth Circuit's precedent in the Paulson case that when an old rule is struck down, you revert to the preexisting rule. The old one comes back. The old rule that came back was the rule with the temporary Tongass exemption in it. But then USDA declined to take any further action to adopt a new or different permanent rule. So by de facto operation, this temporary rule just went on and on and on, contrary to the stated intent in the record of decision. And again, the rationale for the various factors they identified, jobs, roads, utilities. If I could ask you, let's say we agreed with you that this temporary rule was not in line with administrative procedures in terms of rational basis and all those things. Would the Tongass exemption still be in place? I don't understand the question, Your Honor. I'm sorry. So under the other litigation, when they struck down in the district court in San Francisco, the petition or application, that brought the temporary exemption as being online, correct? Yes. In fact, it reinstated that. Yes, that's correct. So is that the same temporary exemption we're talking about here? Yes, exactly. So it's enforced by that unless some court ultimately takes it out. Like Judge Sedgwick did. Yes, that's correct. Okay. Suppose, and this is purely hypothetical, suppose the panel were to conclude that the reasons for adoption of the rule are insufficient, don't meet the administrative law standard. Why shouldn't this go back to the agency for a redetermination? If we affirm Judge Sedgwick, are we saying that under no state of reasons, under no support whatsoever, can the Tongass National Forest be exempt from the roadless rule? No, that holding would not reflect that, Your Honor. The ordinary remedy in an Administrative Procedure Act case is when a rule is held to be arbitrary, it's invalidated. Now, there's discretion to do otherwise, but there's no indication of an abuse of discretion here, and that holding does not have the effect that you're describing, that they could never adopt a Tongass exemption. The USDA could go back and adopt a new Tongass exemption or a different roadless rule or whatever they want. You're not in any way constraining the agency's choices about how it can proceed from here. You'd simply be striking down an arbitrary decision consistent with the normal case law in these cases. But I think we've had other cases that Judge Hawkins is alluding to where you don't have to start the procedure all over if within your record maybe the information is there. We've had cases where it could be there, but they didn't articulate it, or it didn't articulate it in a way in which we could determine there wasn't an arbitrary or some kind of abuse of discretion, and in effect, as he points out, it could be remanded to the agency to see whether or if it could comply with this. Would there be any administrative impediment to that? Well, in order to do that, you would have to hold that Judge Sedgwick abused his discretion by invalidating the rule. The standard of review for that remedy is abuse of discretion, and I don't think there's been any showing of an abuse of discretion here. You don't think we have a de novo review here? No, I don't think so. I think that on a remedy question, the standard of review is abuse of discretion. Let me ask you a question, last one. Some of these cases are resolved by mediation. Have you attempted that? Or if you haven't attempted it, can we give you a shove toward that? Are you talking about like the Ninth Circuit Mediator's Office? Yes. Yeah, part of the problem was USDA wasn't even in the case, and so we didn't really see any prospect for mediation. I can tell you we have talked with USDA about these things and haven't been able to work it out today. Thank you. Thank you, Your Honor. Okay, yeah. You have some rebuttal time, Mr. Winthrop. Thank you. First, just very quickly, on the issue of USDA's intended duration of this document, I again ask you to look at page 77, the discussion about the change and what they had to say about the invalidation of the rule. We believe it becomes very clear there that even if they had originally intended to move very quickly on a final rulemaking, thus making this short term, here I believe they clearly state that with the rule invalidated, this affects their thinking on how quickly they're going to move forward on a final rule, since there's nothing pressing. Those aren't their exact words, but I think that's clearly what they're saying here. And given that, they wanted to clarify that this exemption is going to remain in place until they do a final rule after already having pointed out. Would you address Mr. Waldo's point that the real rationale for the ROD is socioeconomic values, which are, Mr. Winthrop, rather than congressional direction? Thank you. Yes, I was going to address that. This 11-page ROD, I believe, it's important that you read it as a whole and in context. And when you read that, I think it's very, very clear what occurred here. Now, first of all, the socioeconomic, the effects on communities, et cetera, that actually is no change in position from what they did in the roadless rulemaking. They had significant concerns about all of those then, clearly stated. And, yes, they clearly state that there is a certain reweighing in this. But the purpose for the reweighing is the litigation with the state of Alaska. We raised the claims of ANILCA and TTRA. And, incidentally, yes, the state does believe the provisions in those statutes are mandatory and that the roadless rule violates them, but that's not before this court. It's not before the court in this decision because we concede that's not what USDA said. USDA has never agreed that those are mandatory provisions, which is why we're in another forum litigating that issue. However, they clearly were caused to take a very hard look at those statutes. And when they did, they came to a conclusion that the best way to implement the letter and spirit of those statutes was to exempt the Tongass given the significant concerns they have on these other reasons. So, yes, they went through those in the rod, pointing out the significant concerns, but they essentially came to the same conclusion. There are significant concerns, socioeconomic, lack of road development for the communities, etc. So we believe that adds up to a very, very valid reason and rationale that should be supported, that should be affirmed by this court. Again, if you go to Chevron versus NRDC, if Congress speaks clearly, it's the end of the matter. Whereas the state believes these statutes speak clearly, USDA did not go that far. However, they certainly interpreted the intent of Congress from those statutes. What did they interpret? I'd be hard-pressed to figure out. In other words, what would I say I give Chevron deference to? Sure. In the paragraphs immediately preceding that statement, the best way to interpret the letter and spirit of the law, their discussion is squarely on ANILCA's provision where Congress found that the balance of protections have already been reached. Now, no, I agree they don't accept the premise that the next part of that statute, no more withdraws, applies. However, clearly they're interpreting the fact that Congress told them, in a general sense at least, enough. Enough lands are protected. Your position is causing me to wonder. On the one hand, you say that your position is not that ANILCA is mandatory as to no roadless rule. And then you're saying that Chevron tells us that where Congress speaks clearly, the agency must follow. It seems to me that if the agency thinks that Congress has spoken clearly, it would take the position that ANILCA is mandatory. Well, again, I'm conceding that in this case we're not under the standard that Congress has spoken clearly. We're under the second part of Chevron, that the agency has looked at a statute, interpreted the intent of Congress, and implemented it. But what's ambiguous about the statute? You've got to first find that the statute is ambiguous before the agency can interpret it. If the statute is so clear that Congress should be exempted, how can you argue on the one hand it's not mandatory and on the other hand it's unclear and therefore we have to interpret it? Well, Your Honor, I'm certainly prepared in another forum to argue that it is mandatory. But in this case, USDA did not offer that as a rationale for the rulemaking. No, but did they say it was ambiguous and therefore we're going this route? They did not use those words. Okay, so one last question, at least that I have, there may be others, would be related to the remedy. If we were to disagree with you on the rationale saying that they didn't set it out or that there's holes in the rationale that don't meet administrative standards, would you comment on the remedy of total invalidation of the rule versus some kind of remand? And if there were a remand, what in your view would be a legal basis for such a route? Yes, Your Honor. Our brief touches on that. The amicus from the Alaska Forestry Statute just addresses it in depth. We believe that Judge Sedgwick failed to even recognize that he had discretion. He treated it as an automatic reinstatement under Paulson. There are exceptions under the Paulson rule for when you do not necessarily reinstate the prior rule. One of those is when the prior rule is invalid. At the time the roadless rule was promulgated and at the time of Judge Sedgwick's decision, the roadless rule was enjoined nationwide by the Wyoming District Court. Now, granted, that has since been reversed by the Tenth Circuit. Another exception for automatic reinstatement is when the rule that you're invalidating is an integral part of the management system. Clearly on the Tongass National Forest, the primary management document is the land management plan, and it extensively relies upon harvest of timber from roadless areas that are now prevented by the Tongass exemption. We argue that the Tongass exemption is absolutely an integral part of the management system, and therefore a judge certainly at least has the discretion to consider other remedies, including remanding it back to the agency to figure out what they want to do with it. And should you rule against us, we believe that's what should occur. We believe it should go back to the agency, and in the interim it should be under the Tongass land management plan, which is actually the status quo at the time the exemption was promulgated. It was being managed under the- Kind of hard to get a status quo in this roadless area, isn't it? It's an ever-changing target, and will probably continue to be so. Any other questions?  I'd like to thank both counsel for your arguments this morning. Very helpful. Thank you for coming up from Juneau and for your briefing. The case just argued of Cake v. State of Alaska is submitted.
judges: Hawkins, McKeown, Bea